Robert E. QUARLES et al.,

Plaintiffs-Appellants,

v.

OXFORD MUNICIPAL SEPARATE SCHOOL DISTRICT et al.,
Defendants-Appellees.

No. 72–3534.

United States Court of Appeals,
Fifth Circuit.

Nov. 9, 1973.

Rehearing and Rehearing En Banc
Denied Feb. 6, 1974.

Lewis Myers, Jr., Oxford, Miss., for plaintiffs-appellants.

Will A. Hickman, Oxford, Miss., for defendants-appellees.

ON PETITION FOR REHEARING

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

PER CURIAM:

Appellees' petition for rehearing is hereby granted and accordingly our opinion of July 16, 1973 is withdrawn in favor of the one below.

Oxford's otherwise successful recently desegregated school system is plagued by a transportation problem: hundreds of elementary school children must travel more than a mile and a half to school across dangerous terrain. As relief supplementary to its desegregation order of January 8, 1970, appellants requested the court below to order free transportation for all grade school children residing more than 1.5 miles from their assigned schools. The trial court found that the desegregation order had not increased the children's transportation burden, nor had it distributed the burden unequally. Therefore, the court denied appellants' transportation request, and we affirm.

Oxford presents a situation unlike any encountered before by this circuit in a desegregation suit. According to the trial court's findings, which we cannot say are clearly erroneous, Oxford's black population is scattered throughout the town, albeit in the form of a number of black neighborhoods and not in homogeneous integration. Because of its schools' locations in relation to the town's children, Oxford historically has employed busing as a tool for operating its school system. Many children, black and white, live beyond walking distance from their schools.

All went well until September 1969, when poor finances forced the school board to discontinue busing all students who lived within the city limits of Oxford. The trial court specifically found that busing was not ended for racial reasons. Although free public busing ended, the children's transportation

needs continued. Consequently, private groups began busing students for a fee, a charge which worked a significant hardship on large impoverished families.

A January 8, 1970, desegregation order required all grade school children in Oxford to attend two formerly white schools. Those in grades one through three were assigned to Bramlett, and those in four through six would attend Oxford Elementary. The transportation burden of elementary students as a whole was not increased. The burden was redistributed as some students found themselves closer to their new schools while others were farther away. The redistribution did not affect one race more than the other. The need for bus transportation that existed before desegregation remained unchanged.

Despite the absence of free busing the desegregation scheme has been a success. The Oxford schools' attendance rate is ninety-five percent, and the unitary school system enjoys wide public support. Private busing continues to fill the need for school transportation; its expense falls entirely on students' parents instead of the community as a whole. Consequently, the trial court found, "[c]ertain black parents in large families experience economic hardship because of the cost incurred weekly for private transportation of their children to school."

At the trial plaintiffs showed that, under the desegregation plan, some black school children reside beyond walking distance (1.5 miles) from their schools, and that the danger and the distance involved necessitate private busing. Private busing creates a financial hardship on some black families. Since this court has said in United States v. Greenwood Municipal Separate School District, 5th Cir. 1972, 460 F.2d 1205, that black students are not to shoulder the burden of desegregation, and in other cases that black students assigned to schools out of their neighborhoods and more than 1.5 miles from home are entitled to free transportation as part of the desegregation plan, plaintiffs contend that Ox-

ford's school district must provide free busing. We find this analysis superficially appealing but unpersuasive.

The facts of this case require us to decide whether a desegregation order must include free busing to fill a transportation need that is not related either to segregation or to the court's order dismantling segregation. The answer to this problem lies in three cases: Swann v. Charlotte-Mecklenburg Board of Education, 1971, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554; United States v. Greenwood Municipal Separate School District, 5 Cir., 1972, 460 F.2d 1205; and Brown v. Board of Education of City of Bessemer, Alabama, 5th Cir. 1972, 464 F.2d 382.

██ We must point out that busing as a constitutional right is not an issue in this case, contrary to defendant's rhetoric. Segregated schools violate the pupils' right to equal protection of the law. When that right is violated, students may ask the federal district court for relief; the court uses its equity powers to mold relief that will restore students' constitutional rights in a manner appropriate to the school system and city before the court. *Swann, supra,* 91 S.Ct. at 1276.

*Swann* also tells us that busing is a tool the chancellor may use to implement a desegregation plan and must use when the plan will otherwise fail. In that case the Court found that busing would be necessary to effectuate the court-ordered majority-to-minority transfer plan.

*Bessemer* likewise required busing because it was necessary to implement the court-ordered desegregation plan. The district court's desegregation order included a majority-to-minority transfer plan and school attendance based on geographic zones. The order contained one important caveat. If a student lived more than 1.5 miles farther from his assigned high school than from the other high school, and if transportation were not available to him at a moderate cost, he could attend the other, nearer high

school. The court did not provide for free busing. Thus its failure to provide free busing emasculated the desegregation plan; anyone could plainly see that without free transportation many students would elect to stay at their old one-race high school rather than travel farther to a new integrated high school.

Following *Swann* and *Bessemer* we must order free busing for Oxford if it is necessary to disestablish the old dual school system. Oxford's experience shows that free busing is not "necessary" in the sense that the desegregation plan will fail without it. On the contrary, the system is now entirely unitary and the attendance rate is ninety-five percent. While the school board's decision to place the cost of busing on individual parents may be debatable, the plan does work. We do not face here the questions that would arise if busing's cost forced many children to stay home and dropped the attendance rate significantly.

 Making a desegregation plan work is not the only factor a court should consider in deciding whether busing is necessary. In United States v. Greenwood Municipal Separate School District, 5th Cir. 1972, 460 F.2d 1205, the district court's noncontiguous zoning plan compelled black elementary students to leave their nearby neighborhood black school and attend a white school two miles away without the aid of free busing. The appellate court disapproved and required free busing, saying "[n]o legitimate reason is put forth for forcing them and their parents to shoulder the burden of eliminating these vestiges of segregated schools in the circumstances present here." 460 F.2d at 1207. From this we conclude that when a court acts to order desegregation, it is required to supply free transportation to offset any significant increase in travel requirements falling on one race or the other as a result of the order.

 In the instant case, by contrast, the trial court found that its desegregation order left some white students and some black students closer to elementary school than before, while other blacks and other whites found themselves farther away. Neither race suffered an increase in its transportation burden. The overall transportation burden was not increased but was redistributed with equal effect on each race. If one race does not face an increased transportation burden as a result of desegregation, *Greenwood* does not require busing.

Considerations of fairness might mandate free busing where a desegregation plan significantly increased the total distance students in the community must travel to school, even though the increase affected both races. For example, a plan might require all students in the community to travel farther to school, with the average increase per student being five miles per day. In that case the court has imposed a significant new burden, and it would be appropriate for the court to order busing that would alleviate the burden it has created. In the instant case, however, the trial court found that "desegregation was accomplished without a noticeable increase in the burden of students in elementary grades getting to school as compared with that in attending dual schools operated in the freedom-of-choice area." Thus we cannot require busing on this ground.

The Oxford plan treats both races impartially. It does not increase the total travel requirement, but redistributes it evenhandedly. In short, the transportation problems faced by Oxford students have nothing to do with desegregation. There is no nexus between desegregation and Oxford's transportation problems. If Oxford citizens dislike the present distribution of busing costs, they must seek redistribution in the legislative arena.

We emphasize that Oxford presents a most unusual situation. The court's desegregation order has been implemented effectively without free busing, and the order increased neither the general transportation burden nor the transportation burden of either race. Were any

of these facts different, free busing would be required. We do not hold that school boards may avoid the obligation to provide free busing simply by arranging private busing financed at student expense.

In view of the unique circumstances present in this case, the decision of the district court is affirmed.